

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Sharon Rivera, | ) | C. A. No. 2:09-1083-DCN-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Corrections, | ) ) | |
| | ) | |
| Defendants. | ) | |

This employment discrimination case is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment filed on June 3, 2010. 28 U.S.C. § 636(b).

Plaintiff, Sharon Rivera, sued her former employer, South Carolina Department of Corrections (SCDC), on July 15, 2009. She brought causes of action for discrimination based on gender, race, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and retaliation for protected activity in violation of Title VII.

The plaintiff filed an opposition to the summary judgment motion on June 28, 2010. The defendant filed a reply on July 7, 2010. The defendant filed a motion to compel on October 6, 2010. Hence it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material

fact." Fed.R.Civ. 56(c). The court is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. V. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. V. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash. V. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into

the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

**APPLICABLE EMPLOYMENT DISCRIMINATION LAW**

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).

The prohibition against discrimination in the "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e(a)(1), does not merely proscribe discriminatory acts that result in "tangible loss of an economic character," Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation marks omitted). But it also prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." Id. At 67, 106 S.Ct. 2399 (internal quotation marks omitted). In order to prevail on a claim for sexual harassment amounting to a hostile work environment, a plaintiff must prove "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4)

3

which is imputable to the employer." <u>Gilliam v. South Carolina Department of Juvenile Justice</u>, 474 F.3d 134, 142 (4th Cir. 2007); <u>Ocheltree v. Scollon Prods., Inc.</u>, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*); <u>Conner v. Schrader-Bridgeport Int'l, Inc.</u>, 227 F.3d 179, 192 (4th Cir. 2000).

In <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher</u>, 524 U.S. at 787 (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22, 114 S.Ct. 367(1993)).

In assessing whether a work environment is objectively hostile, a court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u> at 23, 114 S.Ct. 367. No single factor is determinative. <u>See</u>, <u>Id</u>. In assessing whether the environment was objectively hostile, a court must bear in mind that Title VII is "designed to protect working women from the kind of male attentions that can make the workplace hellish

4

for women . . . . It is not designed to purge the workplace of vulgarity." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995); see, Hartsell v. Suplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (noting that "Title VII is not a federal guarantee of refinement and sophistication in the workplace"). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." Id.

## Employer Liability

The Fourth Circuit Court of Appeals has held that an employer is liable for sexual harassment by a non-supervisor such as here if "it knew or should have known about the harassment and failed to take effective action to stop it." Ocheltree, 335 F.3d at 333; Mikels v. City of Durham, 183 F.3d 323, 329, n. 4 (4th Cir. 1999). ("It is now settled that the failure to act after notice standard is one for imposing Title VII liability on employers for their direct negligence . . . ."). Under this standard, liability attaches to an employer when, after acquiring actual or constructive knowledge of the allegedly harassing

conduct, the employer fails to take prompt and adequate remedial action to correct it. Id. The employer standard for liability for co-worker harassment is a negligence standard. Smith v. City of N. Charleston, 401 F.Supp.2d 530, 534 (D.S.C. 2005).

### Retaliation

A plaintiff may demonstrate retaliation through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff must satisfy the "three-step proof process established in McDonnell Douglas Corp. v. Green." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998), citing, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). First, the plaintiff must "establish, by preponderance of the evidence, a *prima facie* case of retaliation." Id. The plaintiff establishes a *prima facie* case by demonstrating (1) that he engaged in protected activity, (2) that he suffered an adverse employment action; and (3) that there is a causal nexus between the protected activity and the adverse action. Brockman v. Snow, 217 F. App'x, 201, 206 (4th Cir. 2007) (citing McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991)).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for his action. Laughlin, 149 F.3d at 258 (citing cases). If the defendant "meets the burden of production, the presumption of retaliation

created by the *prima facie* case 'drops from the case,'" and the plaintiff then "bears the ultimate burden of proving" that he was the victim of retaliation. Id. (internal citation omitted).

The Supreme Court has noted that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Burlington Northern & Santa Fe Rwy. v. White</u>, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345. (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

## FACTS

The facts taken in the light most favorable to the plaintiff as the non-moving party are as follows.

Plaintiff, Sharon Rivera, is a black female, Jamaican immigrant. She is a Licensed Practical Nurse. On February 28,

7

2007, Plaintiff was employed by the South Carolina Department of Corrections (SCDC). Plaintiff participated in the new employee orientation that included standards of conduct and sexual harassment. Plaintiff received a copy of the company's policies regarding employee conduct and employee sexual harassment.

Around May 7, 2007, Daryl Basinger, a co-worker, commented to her that a "holiday [was] coming up and [she was] working." (Plaintiff's Depo. at 97-101). Upon inquiring about what holiday Basinger was referencing, he told her that it was Confederate Memorial Day and, "This is South Carolina, we have a Confederate Day." Id. Plaintiff responded that she would probably be working because she worked every holiday. Basinger answered, "Nah, usually black people don't work that day . . ." because "that's when we [white people] all put on our white robes and go to town." Id. Plaintiff was offended by his comments and complained to her co-workers. Id.

In the same month, Basinger referred to black inmates as "niggers" in Plaintiff's presence on multiple occasions. (Plaintiff's Depo. at 167-69). Plaintiff was offended so she complained of Basinger's conduct to her immediate supervisor, Lynn Malden.

On June 16, 2007, Plaintiff submitted her first written complaint regarding Basinger's conduct to Malden. Malden told her that it would cause more harm than good to submit the

8

complaint.

Other nurses had complained to Malden about Basinger's conduct too. Malden reported Basinger's behavior to Malden's supervisor, Joseph Powell, and told him that many of the nurses did not want to work with him because he made them feel uncomfortable or scared. Powell failed to take any action to investigate the allegations or remedy the claims.

On June 18, 2007, Plaintiff submitted a subsequent report concerning her conversation with Malden and other discriminatory and sexist behavior by Basinger. On June 25, 2007, Plaintiff followed up with a typed report summarizing many of the perceived problems with the job, documenting some of the early discriminatory behavior she witnessed and was the target of.

After submitting her complaint, Plaintiff felt that she became a target of retaliatory conduct. Plaintiff was written up by Malden after submitting the report concerning Basinger's behavior. When questioned about the write up, Malden did not know why Plaintiff was to be written up, but indicated she was instructed to do it by Powell, her supervisor.

Powell outwardly expressed a desire to terminate Plaintiff. When he suspected she had called in sick, but was really working at another job, he happily made remarks like, "I've got her now!" (Plaintiff's Depo. at 86). Additionally, Powell began altering Plaintiff's schedule weekly. Powell changed the schedule so that

Plaintiff was to work on days which she had requested to be off. Plaintiff complained to Malden about these incidents. (Plaintiff's Depo. at 63-65).

Plaintiff continued to complain to both Malden and Powell about having to work with Basinger. Malden attempted to accommodate her requests, but Powell intervened. The following are statements made by Basinger on unspecified occasions which Plaintiff found offensive:

- When Plaintiff was not working one day, Basinger said to all present that she was "at home making plantain sandwiches." (Plaintiff's Depo. at 127-29) He also referred to her as "having a basket on her head." Id.

- When Plaintiff lost her ring, Basinger referred to it as her "skull ring." Id.

- Basinger often threatened that he would "set [her] up" with the inmates.

- Basinger told Plaintiff that "people like you disappear around here all the time; it's dark, you're new, you don't know where you are going; I have lived here for a while, so be careful." (Plaintiff's Depo. at 202-03).

- Basinger told Plaintiff on two occasions that, "I have friends; all you have is the race card."

- Basinger often referred to Plaintiff as "you people." (Plaintiff's Depo. at 183).

- Basinger told her on several occasion to "go back to Miami."

- Basinger hid Plaintiff's work schedule and the pharmacy keys on one occasion.

- On one occasion, Basinger took materials from Plantiff's employee mailbox and told her that "you won't need them because you won't be here much longer."

Plaintiff stated that she was scared, unable to sleep, gained more than 22 pounds in a three month period, stayed with friends on account of her fear of Basinger and went to a counselor. On September 24, 2007, HR determined that Basinger and Plaintiff should not work together. Nevertheless, they were scheduled to work together the following week. (Plaintiff's Depo. at 208-10, 220-21). Plaintiff's physical reaction to Basinger and the accompanying stress caused ulcers and diarrhea. (Plaintiff's Depo. at 208-210, 220-21). Plaintiff went to her physician who advised her that she needed to take a week off from work. Id. After being off a week, she was late on the day of her return because of vehicle trouble. Plaintiff, however, called in an explained her problem. Id.

On October 7, 2007, Basinger was written up by another nurse for "hostile work environment."

On October 10, 2007, Plaintiff was terminated by the warden who told her that her termination was on account of a power struggle between her and Powell. The warden also told her that "today it is truck trouble; tomorrow it will be children." The warden and the HR personnel who formally terminated Plaintiff did so based upon information provided by and at the request of Powell.

After her termination, Plaintiff's medical conditions worsened and her doctor recommended that she see a psychologist.

Plaintiff was prescribed medication for depression.

## DISCUSSION

A review of the record and relevant case law indicates that the defendant's motion for summary judgment should be granted on all grounds except the plaintiff's claim of retaliation for protected activity in violation of Title VII.

### Hostile Work Environment

SCDC does not dispute that the alleged conduct was unwelcomed by the plaintiff. However, there is no evidence that the complained of conduct was based on her sex or that the conduct was severe or pervasive.

SCDC correctly points out, the cases state that an employee is sexually harassed or discriminated against because of her gender if, but for her gender, she would not have been the victim of discrimination. Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000)(citation omitted). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale, 523 U.S. at 80.

In support of her sex discrimination claim, Plaintiff testified that Basinger threatened on several occasions to "set her up" with inmates. There is no indication that such actions and statements by Basinger, even if true, were because Plaintiff

12

was a female. Additionally, Plaintiff testified that other female employees at SCDC felt unsafe because of their gender, based on the actions of Basinger. However, broad, unsupported allegations about co-workers are insufficient to support a claim of sex-based hostile work environment.

Plaintiff's proposed evidence, even if true, fail to establish a genuine issue of material fact concerning whether Basinger's actions were because Plaintiff is a female.

For Title VII purposes, the sexual harassment complained of must be both subjectively and objectively severe or pervasive. Ocheltree, at 331-33. Plaintiff's own testimony is the best indicator of the subjective element, and fully supports her claim. To support the claim that Basinger's sex-based actions were objectively severe and pervasive to a reasonable person, Plaintiff asserts that other female employees found Basinger's conduct to be offensive as well as severe and pervasive.

First, Plaintiff presents no testimony that other women working at SCDC found Basinger's conduct to be related to their sex. Secondly, Plaintiff provides no evidence, including admissible testimony, that any other SCDC employee resigned, complained or feared for their safety due to actions or comments of Basinger. Thus, she fails to present sufficient evidence that Basinger's actions were objectively sexual harassment which was severe or pervasive.

Further the conduct Plaintiff complains of cannot be imputed to SCDC because Basinger was her co-worker, not her supervisor. Pursuant to <u>Ellerth</u> and <u>Faragher</u>, Plaintiff's claim fails because Basinger was not in a position to take any tangible employment action against Plaintiff and did not have such authority.

However, because the plaintiff complained of the unwelcome conduct to her supervisors, Malden and Powell, as well as the warden, and filed written complaints and because of improper procedure, deliberate indifference by Powell, and the absence of any meaningful remedial action, SCDC may still be held accountable.

Plaintiff cannot make out a *prima facie* case with regard to either national origin or race. Plaintiff relies on the three following comments made by Basinger to third parties to support her national origin-based hostile work environment claim: (1) Plaintiff was "at home making plantain sandwiches;" (2) Plaintiff had a "basket on her head;" and (3) Plaintiff's lost ring was a "skull ring". Even if these comments were made because of Plaintiff's national origin, the comments were isolated and none were made in Plaintiff's presence.

Before this court, Plaintiff relies on four specific events to support her claim for race-based hostile work environment: (1) May 7, 2007, conversation with Basinger about the Confederate Memorial Day holiday; (2) Basinger's use of the term "nigger" in

14

reference to black inmates; (3) Basinger's reference to Plaintiff as "you people;" and (4) Basinger's statement to Plaintiff that "I have friends; all you have is the race card."

First, Plaintiff only reported the May 7, 2007, Confederate Memorial Day conversation to SCDC. Plaintiff only reported two of the other three allegations when she filed her EEOC Charge of Discrimination in July 2008. Second, although Plaintiff claims that she was "extremely offended" and "utterly shocked" by Basinger's use of the term "nigger," her testimony and actions belie such allegations. Plaintiff admits she only reported that Basinger used such a reference to Malden on one occasion in June 2007. Further, Plaintiff neither reported this allegation to SCDC in her written complaints dated June 2007 nor complained of it in her EEOC Charge of Discrimination in July 2008.

### Retaliation

Plaintiff claims that she was subjected to "discriminatory animus" from the time she reported Basinger's conduct in June 2007, until and including her termination by SCDC in October 2007. The defendant concedes that Plaintiff engaged in protected activity and that she suffered an adverse employment action. However, Defendant claims that Plaintiff cannot present sufficient evidence to show a causal connection between the two.

In cases where "temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may

15

look to the intervening period for other evidence of retaliatory animus." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)(internal quotation omitted). Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation. Id.

Here the Plaintiff experienced various forms of retaliatory conduct evidencing a discriminatory animus between the filing of her formal complaint and her ultimate termination. She was written up by her immediate supervisor, Malden, whose only explanation was that Powell, her supervisor, told her to do it. The work schedule was repeatedly changed, making it more difficult for Plaintiff to plan when she was supposed to be working. The schedule was prepared at the beginning of the month, and after her complaint, someone, allegedly Powell, began penciling in her name for alternative shifts than those she had originally been assigned. This only happened to Plaintiff's schedule, not other's. Powell also outwardly expressed a desire to get rid of Plaintiff during this period.

Also the evidence is that Basinger's harassment increased after Plaintiff filed her complaint. He threatened "to get rid of" her. Plaintiff pleaded that she not be made to continue to work during the same shifts as Basinger, but Powell continued to schedule them together, despite Malden's objections to the practice. Plaintiff requested a transfer that was denied.

Both the temporal proximity, June to October, between the Plaintiff's protected activity and her discharge can alone establish the requisite casual connection, the evidence of continuing discriminatory animus also establishes a causal connection between her protected activity and her termination.

In this case, the warden and HR personnel, serving as formal decision makers, based their discharge decision on the recommendation of Powell. They did not conduct an independent investigation or review the facts. The evidence is they simply "rubber-stamped" Powell's recommendation. Therefore, for Title VII purposes, Powell was the *de facto* decision maker.

"Title VII and the ADEA do not limit the discrimination inquiry to the actions or statements of formal decision makers for the employer. Such a construction of those discrimination statutes would thwart the very purposes of the acts by allowing employers to insulate themselves from liability simply by hiding behind the blind approvals, albeit non-biased, of formal decision makers." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 290-91 (4th Cir. 2004)(citing Reeves, 530 U.S. at 151-52). An employer will not be shielded from the discriminatory motivations of a subordinate employee when that employee acts as the actual or de facto decision maker, and the formal decision maker simply rubber stamps that employee's recommendation. Id.

### Punitive Damages

Plaintiff seeks punitive damages in her complaint. SCDC, however, is an agency of the State of South Carolina and, therefore, Plaintiff cannot recover punitive damages pursuant to Title VII. Therefore, it is recommended that Plaintiff's claim for punitive damages be dismissed.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted on all grounds except the plaintiff's claim of retaliation for protected activity in violation of Title VII.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

November 23, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).